Case 4:17-cv-02167   Document 13   Filed on 06/05/18 in TXSD   Page 1 of 15

United States District Court
Southern District of Texas
**ENTERED**
June 05, 2018
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JUSTIN CUNNINGHAM, §<br>*Plaintiff,* §<br>§<br>v. §<br>§<br>NANCY BERRYHILL, §<br>Acting Commissioner of §<br>Social Security Administration, §<br>*Defendant.* § | CIVIL ACTION NO. 4:17-CV-02167 |

## **MEMORANDUM AND RECOMENDATION**

Plaintiff Justin Cunningham filed this case under the Social Security Act, 42 U.S.C. 405(g) requesting review of the Commissioner's final decision denying his application for social security disability insurance benefits and Supplemental Security Income. Dkt. 1. Cunningham and the Commissioner both moved for summary judgment. Dkt. Nos. 11, 12. After reviewing the record and the law, it is recommended that Cunningham's motion be denied, and the Commissioner's motion be granted.

### **Background**

Although only thirty-six years old, Cunningham has a complicated medical history. He has had multiple knee surgeries for degenerative conditions, a compression fracture of the spine caused by an automobile accident, and he has been diagnosed with a variant of Lyme disease. Of greater concern, he has a lengthy history of narcotic and opioid addiction with multiple overdoses, intravenous drug use, and has contracted hepatitis C. To treat his addictions, he attended a two week inpatient detoxification program in March 2011, but continued to use opioid pain medication until he entered a

methadone treatment program in April 2013. The medical records indicate he was generally compliant with his treatment until he relapsed in April, 2016. Dkt. 6-3 at 48.

He filed a claim for disability insurance benefits on June 17, 2013, in which he alleged that he became disabled beginning May 22, 2008. Dkt. 6-9 at 2-8. On December 5, 2013, he filed a claim for supplemental security income alleging he became disabled beginning on January 11, 2012. Dkt. 6-9 at 9-17. In both applications, he insisted he suffered from a broken back, spina bifida, chondromalacia, hepatitis C, high blood pressure, and bipolar disorder. Dkt. 6-10 at 39. His claims were denied on initial review, so he requested a hearing before an administrative law judge. That hearing took place on October 1, 2015. At the hearing before the ALJ, he amended the onset date to April 1, 2013. Dkt. 6-4 at 8. A supplemental hearing was held on March 23, 2016 in order to allow a psychologist to testify on the significance of Plaintiff's neurocognitive disorder in conjunction with his physical ailments. Dkt. 6-3 at 71-100.

The ALJ denied the claims on April 19, 2016 after completing the required five-step[1] sequential analysis. Although the ALJ determined at step two that Cunningham had

---

[1] "The sequential evaluation process is a series of five steps that we follow in a set order. . . .These are the five steps we follow:

(i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

several severe impairments including mild neurocognitive disorder, major depression, anxiety disorder not otherwise specified, hepatitis C, disorders of the back, and post-surgical knee disorders, he concluded at step three that those impairments, individually and together, did not meet or medically equal any of the Agency's listed impairments. Dkt. 6-3 at 15-17. The ALJ decided that Cunningham had the residual functional capacity to perform light work[2] with some exertional limitations: he can stoop, crouch and kneel only occasionally, cannot climb rope, ladders or scaffolds, is limited to simple, routine, repetitive tasks at an unforced pace, and should have no more than occasional interaction with the public and coworkers. *Id.* The ALJ conceded that Cunningham was unable to perform any of his past relevant work as a process operator, paper machine operator, or in auto sales, because those positions exceeded his residual functional capacity. However, he concluded that Cunningham could work as a small parts assembler, laundry bagger, or food sorter, and so he was not disabled under the Act. Dkt. 6-3 at 23.

Cunningham sought review by the Appeals Council of the ALJ's decision. With his request, Cunningham included additional records from a hospitalization at Corpus Christi Medical Center for treatment of a suspected overdose between April 13, 2016 and

---

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§404.1520, 416.920.

[2] The ALJ defined light work as "lifting and/or carrying up to 20 pounds occasionally and lifting and/or carrying up to 10 pounds frequently; standing and walking up to 6 hours in an 8-hour workday; sitting up to 6 hours in an 8-hour workday; and pushing and pulling the same weight as lifting and carrying (See CFR 416.967(b))." Dkt. 6-3 at 17.

April 19, 2016[3], as well as a Physical Residual Functional Capacity questionnaire completed by Dr. Patricia Salvato on April 14, 2016 in which she explained that his depression and anxiety contributed to the severity of his functional limitations. The Appeals Council decided the additional evidence did not show a reasonable probability that it would change the outcome. Dkt. 6-3 at 3. Because of that, it declined to consider the new evidence, and refused to review the ALJ's decision. *Id.* at 2-3. Cunningham then filed this action seeking judicial review pursuant to 42 U.S.C. § 405(g).

## Standard of Review

Section 405(g) of the Social Security Act governs the standard of review in disability cases. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). The Commissioner's decision to deny social security benefits is reviewed by the federal courts to determine whether (1) the Commissioner applied the proper legal standard, and (2) the Commissioner's factual findings are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. "Judicial review is to be deferential without being so obsequious as to be meaningless." *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986).

A claimant is disabled only if he is "incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992). The Commissioner applies a five-step sequential analysis to decide disability status. The claimant bears the burden of proof on the first four steps to establish that a disability

---

[3] The ALJ issued his decision on April 19, 2016, the day Cunningham was released from Corpus Christi Medical Center.

exists. If successful, the burden shifts to the Commissioner, in step five, to show that the claimant can perform other work. *McQueen v. Apfel*, 168 F.3d 152, 152 (5th Cir. 1999). Once the Commissioner shows that other jobs are available, the burden shifts back to the claimant to show that he is unable to perform the alternative work. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).

The Commissioner's decision must stand or fall with the reasons stated in the ALJ's final decision. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). Post hoc rationalizations for an agency decision are not to be considered by a reviewing court. *SEC v. Chenery*, 332 U.S. 194, 196 (1947).

**Analysis**

Cunningham only challenges the ALJ's determination that his severe major depression did not meet or medically equal a listed impairment. He argues that the ALJ did not consider all of evidence concerning his depression and "cherry picked" the evidence to support his final determination. Dkt. 11 at 20. Specifically, he contends that the ALJ did not fully and appropriately consider the opinions of Larry Pollock, Ph.D. and Adriana Strutt, Ph.D., two neuropsychologists, in light of his testimony at the hearings. Dkt. 6-14 at 53. Cunningham does not directly point to any evidence the ALJ ignored, but argues instead that if the ALJ had truly considered all of the evidence, he would have reached a different conclusion.[4]

Cunningham's argument implies that these two opinions should have been given greater weight than the opinions of the consulting experts acting on behalf of the state.

---

[4] Cunningham does imply the ALJ didn't adequately consider his testimony because the written decision refers only to a single statement he made in the hearings. Dkt. 11 at 19.

While the opinions of a claimant's treating physicians are "entitled to great weight," *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995), neither Dr. Pollack nor Dr. Strutt were Cunningham's treating physicians. *See Neal v. Colvin*, No. A-14-CV-906-AWA, 2015 WL 5098796, at *4 (W.D. Tex. Aug. 31, 2015) (consulting examiner who saw Plaintiff one time was not a treating physician whose opinion was entitled to controlling weight). A "[t]reating source means your own physician . . . who provides you . . . with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 416.902. Drs. Pollack and Strutt each examined Cunningham one time, at the request of his attorney, for the purpose of preparing a report in connection with his disability claim. Accordingly, they do not have an ongoing relationship with Plaintiff and their opinions are not controlling under the treating source rule.

Even so, Social Security regulations state that ALJs should evaluate all medical opinions in light of several factors, "such as the consultant's medical specialty and expertise in our rules, the supporting evidence in the case record, supporting explanations the medical or psychological consultant provides, and any other factors relevant to the weighing of the opinions." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i). As such, the ALJ was required to consider their opinions, explain the weight he accorded to each opinion, and consider whether that evidence established that Cunningham was disabled. *See id.*

In order to meet the applicable level of severity for depression, anxiety, or organic mental disorder – the mental disorders from which Cunningham suffers – a claimant must show a medically documented condition resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or

4. Repeated episodes of deterioration or decompensation in work or work-like settings which caused the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behavior).

20 C.F.R., Part 404, Subpart P., Appendix 1, § 12.02(B), 12.04(B), 12.06(B). Cunningham insists that Dr. Pollack's testimony establishes that he meets all four of these criteria. Dkt. 11, at 9-10. The ALJ did not agree. The question, then, is whether the ALJ's decision is supported by substantial evidence.

Through the course of his written opinion, the ALJ considered the opinions of each of the doctors who examined Plaintiff and discussed his mental disorders and depression.[5] Cunningham was first examined by Kevin Mark Correia, Ph.D., a clinical psychologist acting on behalf of the state, on December 13, 2013. Dkt 6-12 at 84-88. Dr. Correia recorded Plaintiff's statements that he had been hospitalized for depression several years earlier, had received psychotherapeutic treatment for behavioral problems while in school, attempted suicide once when he was seventeen, and had unsuccessfully tried various anti-depressants that only made his anxiety worse. Cunningham denied any other

---

[5] Cunningham complains only of the ALJ's decision regarding his depression, so the court will limit its discussion to the medical opinions relevant to this contention.

hospitalizations or psychiatric treatment for his depression or anxiety. Plaintiff also told Dr. Correia that he was generally able to care for himself, including cooking, cleaning, and shopping for groceries. He occasionally attended church, but did not have friends or socialize with anyone other than his mother. He generally spent his days helping around the house. It was hard for him to fall asleep because he could not relax and calm himself, but once asleep he rested for 4-5 hours.

Dr. Correia believed it would take Cunningham longer to complete tasks because of his physical health limitations, but he was otherwise able to follow directions and complete simple tasks. He did not see any episodes of decompensation or deterioration in Cunningham's condition. He saw no evidence of delusions or paranoia. Cunningham's memory was intact and retention was good, he was able to concentrate without undue distractability, and his judgment was adequate. Dr. Correia concluded that Cunningham suffered from chronic mild anxiety that emanated from limitations caused by various other physical problems. Dr. Correia did not provide a direct statement on whether Cunningham met any of the four criteria set forth in the statute, but his report does not support any such finding.

Cunningham was next examined by Dr. Pollock, at the request of his attorney, on June 30, 2015. Dkt. 6-13 at 70-81. At that time, Cunningham told Dr. Pollock that he was unable to perform most daily activities because of a combination of his physical, cognitive, and emotional limitations. He said that, because of his depression and anxiety, he was not motivated to help his mother. Because of that, his mother was primarily responsible for completing the household chores, managing his finances, and ensuring he

received medical care. Cunningham also told Dr. Pollock that he was easily irritated with others and avoided people. Dr. Pollock described Cunningham as "unable to complete basic every day tasks due to depression, anxiety, low frustration tolerance, low motivation, and memory problems." He said that Cunningham was "unable to perform physically strenuous work due to his many medical issues and physical injuries" and "has to take many short breaks." Dr. Pollock further recorded that Cunningham "reported several episodes of decompensation, including three psychiatric hospitalizations and three to five suicide attempts."[6] Dr. Pollock tested Cunningham's intellectual functioning. Cunningham was generally average to above average on most tests, but his working memory and processing speed were deficient. Dr. Pollock believed this showed a neuropsychological dysfunction. Dr. Pollock concluded that Cunningham satisfied all four criteria, with marked limitations in each area and episodes of decompensation. He diagnosed major neurocognitive disorder, major depressive disorder, generalized anxiety disorder, post-traumatic stress disorder, and stimulant use disorder.

Six months later, on December 3, 2015, Cunningham was examined by Adriana Strutt, Ph.D., a clinical neuropsychologist, at the request of his lawyer. Dkt. 6-14 at 53-57. Dr. Strutt repeated many of the same tests that Dr. Pollock had done, with similar results. Cunningham's reading and arithmetic skills were average. His visual-figure immediate memory was very superior, but his auditory-verbal recall was deficient, as well

---

[6] The medical records in evidence reveal only a single, two week psychiatric hospitalization in February, 2012. Dkt. No. 6-13 at p. 16. He was hospitalized after telling his mother he was going to kill himself, following a day-long episode of "huffing" paint and using bath salts. *Id.* There are no reports of suicide attempts in the medical records – other than his statement to Dr. Correia that he attempted suicide at age 17 - and Cunningham repeatedly denied being suicidal, even after an overdose of prescription medication. Dkt. No. 6-13 at pp. 3-5, Dkt. No. 6-14 at p. 6.

as his recognition memory. His responses on the attention and executive functioning tests suggested a borderline impairment in flexibility and set-shifting. Cunningham described a severe level of daily distress. However, Dr. Strutt said that his personality profile might be invalid due to overreporting. She pointed out that "he provided a very unusual combination of responses that is strongly associated with non-credible memory complaints" and "with non-credible reporting of somatic and/or cognitive symptoms." She concluded that his responses "may occur in individuals with substantial medical problems who report credible symptoms, but it could also reflect exaggeration." She also reached a milder conclusion on the severity of his condition than Dr. Pollock. She diagnosed him to be suffering from a mild neurocognitive disorder, medication induced anxiety disorder, and made a note that he said he was also suffering from major depressive disorder, post traumatic stress disorder, and agoraphobia.

The final medical opinion on Cunningham's mental disorder was provided by Darren Hammel, Ph.D., a clinical psychologist called by the state to testify at the hearing before the ALJ on March 23, 2016. Dkt. 6-3 at 75-88. Dr. Hammel reviewed all of Cunningham's medical records and testified that, in his opinion, Cunningham suffered from a moderate cognitive disorder, with a history of opioid dependence, major depressive disorder, and anxiety disorder, not otherwise specified. *Id.* at 75. He explained that the cause of the cognitive disorder was unknown, although it was most likely the result of Cunningham's past drug use and use of inhalants and bath salts. However, he did not believe Cunningham met or equaled the criteria of any listing. Where Dr. Pollock found Cunningham to have a marked limitation in his activities of daily life, Dr. Hammel

saw only mild limitations based on Plaintiff's statements that he was able to complete household chores. Dr. Hammel saw moderate limitations in social functioning because of anxiety, whereas Dr. Pollock saw marked limitations in that area. In the area of concentration, persistence and pace, Dr. Hammel saw moderate limitations; Dr. Pollock again had said those limitations were marked. Regarding the final criteria, repeated episodes of deterioration or decompensation,[7] Dr. Hammel saw no evidence of discrete episodes of decompensation, only a chronic course, while Dr. Pollock said that Cunningham met this criteria based on his self reporting.

The ALJ considered and exhaustively discussed each of these opinions in his decision. Dkt. 6-3 at 15-22. He gave the most weight to the opinions expressed by Dr. Hammel because, in part, he had reviewed all of the medical records, in contrast to the other psychologists. Dkt. 6-3 at 21. Dr. Hammel also explained, when he testified at the hearing, specifically how he agreed and disagreed with the opinions of Dr. Pollock and Dr. Strutt.

In his decision, the ALJ first discussed whether Cunningham satisfied the Listing criteria for depression, anxiety, or mental impairment. With respect to restrictions on his daily activities, the ALJ determined Plaintiff had only mild restrictions. The ALJ pointed out that Cunningham had told Dr. Correia he was able to attend to his personal hygiene, shop, cook, and handle basic financial transactions, even though he later told Dr. Pollock he was unable to leave his room some days because of his mental health symptoms. Dkt. 6-3 at 16. Plaintiff described his daily routine when he filled out his application for social

---

[7] The Act defines "repeated episodes" to be three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks. 20 C.F.R., Part 404, Subpart P., Appendix 1, § 12.00 (C)(4).

security benefits. Dkt. 6-10 at 58-65. In it, he said that he cared for his mother, helped her with whatever was needed, and made sure the house was clean. *Id.* at 59. He prepared his own meals, did laundry, and vacuumed the house. *Id.* at 60. Although he has been prescribed anti-anxiety and anti-depressant medications, he has not treated with a psychiatrist or psychologist except on the single occasion when he was hospitalized for huffing paint and using bath salts. Dkt. 6-12 at 40, 6-13 at 16. From this evidence, the ALJ decided that Dr. Pollock's finding of marked limitations in activities of daily living were inconsistent with Cunningham's self reporting to Dr. Correia, and concluded that Plaintiff had only mild restrictions instead.[8] Dkt. 6-3 at 16, 21.

The ALJ then agreed with Dr. Hammel's finding that Cunningham had moderate limitations in social functioning and rejected Dr. Pollock's claim that those limitations were marked. *Id.* at 16. To support his decision, the ALJ pointed to Plaintiff's testimony that he did not have any difficulties getting along with other people. *Id.* Cunningham also had said he did not struggle to get along with others in a function report as part of his application, although he also reported at that time that he was "less social due to [his] illnesses." Dkt. 6-4 at 11, 6-10 at 71. The ALJ similarly agreed with Dr. Hammel that Cunningham had only moderate limitations in concentration, persistence, or pace. Dr. Hammel testified that even though the tests conducted by Drs. Pollock and Strutt showed deficient logical memory recall, Cunningham had a very high visual recall ability that allowed him to functionally compensate for that deficiency. Dkt. 6-3 at 16, 78. In general,

---

[8] Although the examinations by Dr. Correia and Dr. Pollock were roughly eighteen months apart, there is no indication Cunningham received treatment for depression or anxiety with a mental health professional during the intervening period of time. In fact, there is evidence of only minimal medical treatment of any kind during this time period.

the ALJ agreed with Dr. Hammel's conclusions regarding the severity of Plaintiff's limitations, and there is substantial evidence to support that decision. *Id.*

With respect to the final criterion, the ALJ determined that Cunningham had experienced no episodes of decompensation. That finding is supported by the medical evidence which shows only one hospitalization after an episode of drug use, that itself immediately followed an accidental drug overdose. With only this evidence, the ALJ necessarily rejected Dr. Pollock's finding of repeated episodes of decompensation. That choice is supported by substantial evidence; Dr. Pollock based his opinion solely on the statements of Cunningham, but the medical records do not support those statements. There is not any evidence in the medical records that Cunningham experienced three episode of decompensation within one year, with each episode lasting at least two weeks. Dr. Pollock's conclusion that he experienced repeat episodes of decompensation is not consistent with the medical evidence, and it was appropriate for the ALJ to reject that conclusion. In summary, the ALJ's determination that Plaintiff's mental impairments did not meet or medically equal the severity of a listed impairment is supported by substantial evidence.

Cunningham next suggests that he met the requirements of 20 C.F.R., Part 404, Subpart P., Appendix 1, § 12.04(C) which requires evidence of both:

1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); *and*

2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

Cunningham points to Dr. Hammil's testimony in support of Dr. Strutt's statement that Plaintiff will "require continued treatment to compete" and maintain employment. From this, Plaintiff appears to argue that he meets this listing criterion because he requires ongoing treatment. Cunningham's argument fails because a physical or mental condition that is controlled by medication is not disabling. *Muckelroy v. Astrue*, 277 F. App'x 510, 512 (5th Cir. 2008) (rejecting "Muckelroy's main contention that he is disabled because he needs medication to work."). Although there is some evidence that he may need ongoing mental health therapy and medical treatment, there is no evidence that he has only a minimal capacity to adapt to changes in his environment.[9] Instead, Dr. Strutt's statement indicates he can work if he continues to receive treatment, and Dr. Hammil agreed. On this record, Cunningham has not met his burden to show that he meets this listing criteria.

The ALJ considered the opinions of the various consulting examiners and concluded the testimony of Dr. Hammel was most consistent with the medical evidence. The task of a reviewing court is not to reweigh the evidence, but only to make sure the record contains substantial evidence to support the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In this case, there is substantial evidence to support the ALJ's decision.

## **Recomendation**

---

[9] There is no evidence that Cunningham was receiving treatment specific to his depression, anxiety, or other mental impairments in the two year period prior to the ALJ's decision. During that time, he received treatment for his opioid addiction, and for his various physical ailments. During his treatment with D. Patricia Salvato, he did complain of depression, however, there is no indication that he was given any medication for that condition or referred to a psychiatrist for treatment.

For these reasons, the court recommends that Cunningham's motion for summary judgment be denied, and the Commissioner's motion for summary judgment be granted.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See* Rule 8(b) of the Rules Governing Section 2254 Cases; 28 U.S.C. § 636(b)(1)(c); FED. R. CIV. P. 72.

Signed at Houston, Texas on June 5, 2018.

Stephen Wm Smith
United States Magistrate Judge